Lynn Hubbard, III, SBN 69773
Scottlynn J Hubbard, IV, SBN 212970
**DISABLED ADVOCACY GROUP, APLC**
12 Williamsburg Lane
Chico, CA 95926
(530) 895-3252

Attorneys for Plaintiff, Larry McIver

UNITED STATES DISTRICT COURT,

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY McIVER,<br><br>        Plaintiff,<br><br>v.<br><br>TARGET CORPORATION dba TARGET #274; et al,<br><br>        Defendants. | Case No. 08cv0132 IEG (WMc)<br><br>**PLAINTIFF'S OPPOSITION to DEFENDANT FRIT ESCONDIDO PROMENADE, LLC'S MOTION to DISMISS PLAINTIFF'S STATE LAW CLAIMS PURSUANT to 28 U.S.C. 1367(c)**<br><br>Date:    April 28, 2008<br>Time:   10:30 a.m.<br>Room:  Courtroom 1<br><br>**Honorable Irma E. Gonzalez** |

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 1

# I. INTRODUCTION

Defendant Frit Escondido Promenade, LLC (hereinafter "Frit Escondido") has filed a motion to dismiss plaintiff Larry McIver's (hereinafter "McIver") state claims. To support its argument, Frit Escondido argues that the state law claims raise novel and complex issues of California law. Furthermore, Frit Escondido relies on a recent decision from a state appellate court, in the case of *Gunther v. Lin,* for the bulk of its argument.

McIver is well aware that this Court is familiar both with the legal issues at stake as well as the arguments presented, as this Court has previously ruled on nearly identical motions to dismiss.

Having, therefore, previously "put his best foot forward" in the form of arguments in these cases, McIver realizes that he is unlikely to persuade this Court to a different ruling in the instant matter. However, for the purposes of putting forth said arguments on the record in this case – with an eye towards appeal – McIver requests the Court's indulgence as he repeats those arguments.

# II. DISCUSSION

## A. This Court, if it Opts to Decline Jurisdiction, Should Only Decline Jurisdiction Over the Unruh Act Claim

The basis of Frit Escondido's argument is that due to a conflict between the federal and state courts over whether a showing of intent is required to obtain statutory damages under the pled California Unruh Act (a state appellate court has ruled that such showing is required, while a Ninth Circuit case had previously held the opposite), this Court must decline jurisdiction over that claim as a matter of comity, and to deal with the uncertainty and confusion that this issue currently presents to federal

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 2

1  courts.. *See Defendant Frit Escondido Promenade, LLC's Motion To*
2  *Dismiss State Law Claims And Decline Supplemental Jurisdiction*
3  (hereinafter "Frit Escondido's Motion"), pp. 6-7.
4       As already stated, McIver is well aware as to how this Court has
5  ruled previously on this issue, and therefore presents his arguments, *infra,*
6  for the record only.
7       First, McIver points out that Frit Escondido's argument applies <u>only</u>
8  <u>to the Unruh Act claim</u> – it has no force with respect to McIver's other state
9  law claims. Frit Escondido's position is clear: due to the tension between
10 the state and federal courts regarding intent with the *Unruh Act*,
11 supplemental jurisdiction should be declined.  Fair enough.  But, there is no
12 such tension or conflict regarding the Disabled Persons Act, or any of
13 McIver's other state claims.  Therefore, this Court has no reason to decline
14 supplemental jurisdiction over McIver's other state law claims such as the
15 Disabled Persons Act claim, which does not require a showing of intent to
16 discriminate, and therefore presents no "novel or complex" issues.
17      And of course, in light of the absence of such argument, this Court
18 has the usual reasons to <u>retain</u> jurisdiction over these other state claims.
19 "District courts **shall** have supplemental jurisdiction over all other claims
20 that are so related to claims in the action within such original jurisdiction
21 that they form part of the same case or controversy." 28 U.S.C. § 1367. "A
22 state law claim is part of the same case or controversy when it shares a
23 'common nucleus of operative fact' with the federal claims and the state and
24 federal claims would normally be tried together." *Bahrampour v. Lampert,*
25 356 F.3d 969, 978 (9th Cir. 2004).  A court may decline to exercise
26 jurisdiction over a supplemental state law claim in "exceptional
27 circumstances," where there are "compelling reasons" for doing so. 28
28 U.S.C. § 1367(c).  Otherwise, a court **must** exercise supplemental

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 3

1 jurisdiction under section 1367.

2     As McIver's state claims unquestionably arise out of the same
3 common nucleus of operative facts that make up the ADA claim – for
4 example, the Disabled Persons Act and the ADA generally protect
5 individuals with disabilities from discrimination by public accommodations
6 because of their disabilities, and burdens of proof and standards of liability
7 will be the exact same – McIver argues that this Court must retain
8 jurisdiction over his state law claims, save for the Unruh Act claim.

9 **B.**    **This Court Does Not Face a "Hobson's Choice" as McIver Has**
10       **Pled Intent in His Complaint and Has a Right to Prove Up Such**
11       **Intent**

12     Frit Escondido argues that the recent case of *Gunther v. Lin*, 144
13 Cal.App.4th 223 (4th Dist. 2006), has changed the landscape of Unruh Act
14 claims. Frit Escondido argues that since *Gunther* requires intent in order to
15 obtain statutory damages under the Unruh Act, and as such holding directly
16 conflicts with the Ninth Circuit's opposition holding in *Lentini v. Calif.*
17 *Cntr. For the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004), the "tension"
18 between *Gunther* and *Lentini* requires this Court to decline supplemental
19 jurisdiction over McIver's state claims. *See* Frit Escondido's Motion, pp. 5-
20 7.

21     Frit Escondido's argument is that this Court has no choice but to
22 dismiss the state claims as there is a conflict between the Ninth Circuit and
23 a state appellate court. However, this conflict centers on the issue of *intent*,
24 and on this topic (quite apart from the misguided decision in *Gunther*, as
25 discussed *infra*) this Court need not make any decision regarding the state
26 claims at this early stage of the litigation.

27     This is so because McIver has actually pled intent in his Complaint
28 with respect to all defendants, including Frit Escondido (*see* Complaint,

*McIver v. Target Corporation, et al*, Case No. 08cv0132 IEG (WMc)
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 4

1 Docket Item #1, ¶¶ 63-65), and basic notions of equity mean that McIver
2 deserves a chance to prove that Frit Escondido intended to discriminate
3 against disabled persons.  It is simply too early to dismiss the state claims
4 when McIver has not even had a chance to show this Court that intent is
5 present – regardless of whether it is required or not.  If this Court agrees
6 that *Gunther* requires intent, then McIver has pled it, and has the right to
7 prove it up.  If this Court disagrees with *Gunther* and finds that it is bound
8 by *Lentini*, absolutely no harm is done by McIver pursing a showing of
9 intent to discriminate by Frit Escondido.

10     Either way, this Court need not dismiss McIver's state claims.

11 **C.    *Gunther* Misinterpreted the Current Law, as Well as the Statutes
12          at Issue and This Court is Not Bound by a State Appellate Court
13          Decision**

14     Apart from the preceding argument – that this Court need not make
15 an either-or "Hobson's Choice" at this point in the litigation – Frit
16 Escondido relies on a case that is misguided at best, and completely off the
17 rails at worst.

18     Recently, in the Eastern District, Senior District Court Judge
19 Lawrence Karlton offered a thorough and succinct analysis of the *Gunther*
20 case, and whether it should be interpreted to mean that Unruh Act requires
21 intent, even when an ADA violation has been proven.  This analysis, which
22 takes apart *Gunther* bit by bit, is eminently applicable here, and is a strong
23 and reasoned counterpoint to the recent decision in the *Cross* case cited by
24 defendants.

25     **1.    *Gunther is Not Controlling and it Directly Contradicts Prior
26              Ninth Circuit Law***

27     As the California Supreme Court recently declined to hear the appeal
28 of *Gunther*, the decision of the California appellate court in *Gunther* is <u>not</u>

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 5

controlling on a federal court. *See Wilson v. Haria and Gogri Corp.*, 479 F.Supp.2d 1127, 1136 (E.D. Cal. 2007). Rather, "a federal court sitting in diversity must use its own best judgment to predict how the [California Supreme] court would decide the issue." *Id.* at 1135, *citing Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980).

Judge Karlton properly noted that *Gunther* directly contradicts the Ninth Circuit case of *Lentini v. Calif. Cntr. For the Arts*, 270 F.3d 837, 847 (9th Cir. 2004), which held that because a disabled plaintiff need not prove discriminatory intent under the ADA, plaintiffs also need not prove discriminatory intent under the Unruh Act, since the California legislature amended the Act to incorporate the ADA standards of liability.[1]

Judge Karlton then framed the issue as follows: Whether, therefore, a federal court is bound by *Lentini*, or is obligated to reconsider *Lentini* in light of *Gunther*? As Judge Karlton then observed, answering this question was not necessary, as a statutory and legislative history analysis of the Unruh Act convincingly shows that *Gunther* is not the law of the state, and federal courts are free to disregard intermediate state court decisions where there is "convincing evidence" that the state's highest court would decide differently. *Id.* at 1136, *citing In re Watts*, 298 F.3d. 1077, 1083 (9th Cir. 2002).

McIver will now discuss this "convincing evidence."

**2.    *Legislative History***

As Judge Karlton noted in *Wilson*, *Gunther's* [legal] reasoning is "flawed from the outset," because the linchpin of the *Gunther* court analysis

---

[1]    Furthermore, this Court cannot presume that merely because California's highest court declined to hear the *Gunther* appeal, *Gunther* is the law of the land. A denial of review may occur for many reasons: for example, a lack of appellate split on the issue at the present time. Such denial therefore cannot be taken as California's Supreme Court's approval of *Gunther*. *See Digenova v. State Bd. Of Educ.* 57 Cal.2d 167, 178 (1962).

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**

1  is its assertion that the Unruh Act is comprised <u>solely</u> of Calif. Civil Code
2  section 51. *See Wilson,* at 1137, *citing Gunther v. Lin*, 50 Cal.Rptr.3d 317,
3  320 (Cal.App. 4 Dist., 2006).  However, asserting that the Unruh Act
4  consists only of section 51 would mean that the enforcement section of the
5  Unruh Act – Calif. Civil Code section 52 – is *not* part of the Unruh Act.
6  This inconsistency is not explained – or reasonably dealt with – by the
7  *Gunther* court.  Indeed, as Judge Karlton noted in *Wilson*, even the case that
8  *Gunther* so heavily relies upon, *Harris v. Capital Growth Investors XIV*,
9  (1991) 52 Cal.3d 1142, acknowledges that the Unruh Act encompasses
10 **both** sections 51 *and* 52. *See Wilson,* at 1137, *citing Harris,* 52 Cal.3d at
11 1172 (where the *Harris* court stated that section 52 is "the language of the
12 Act").
13         Therefore, when the California legislature in 1992 amended the
14 Unruh Act to incorporate the ADA at section 51(f), there can be no doubt
15 that the legislature also intended that victims of ADA discrimination would
16 be entitled to the remedies provided by the enforcement section of section
17 52 – that is, the Legislature intended to amend the *entire Act*.
18         Simply put, sections 51 and 52 cannot be divorced – they both
19 comprise the Unruh Act.  Yet *Gunther's* analysis attempts to do just that.
20 Under *Gunther*, an ADA violation is a violation of the Unruh Act, but
21 section 52 does not apply unless intent is proven.  Again, as the *Wilson*
22 court succinctly and eloquently explained, this is flawed reasoning.  If
23 section 51 was amended by the Legislature to include the standards of
24 liability of the ADA – which clearly does not require discriminatory intent
25 – then section 52 was obviously part of this amendment process.  Therefore
26 there is no intent required when an ADA violation is shown in order to
27 trigger section 52's enforcement provision.
28         Simply put, if *Gunther's* analysis is correct – section 51 can be

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 7

amended without any effect on section 52 – then the California's Legislature's amending of the Unruh Act to include violations of the ADA **is rendered completely meaningless**.

Indeed, a logical conclusion of *Gunther's* analysis is a *de facto* **repeal** of the Legislature's action; that is, a repeal of the Legislature's amending of the Unruh Act. It is well-established that such repeal or revocation of legislative acts through judicial decision is frowned upon – there is a "strong presumption against implied appeal." *Western Oil & Gas Assn. V. Monterey Bay Unified Air Pollution Control Dist.*, (1989) 49 Cal.3d 408, 419. *Gunther* does exactly that – it essentially repeals the Legislature's action of amending the Unruh Act to incorporate violations of the ADA.

This became even clearer when Judge Karlton extensively reviewed the history of the amendment in *Wilson* – <u>what, exactly, did the California Legislature intend</u>? This is essential, because California's Supreme Court has explained that analysis of state statutes begins with "the fundamental premise that the objective of statutory interpretation is to *ascertain and effectuate legislative intent*." *Kimmel v. Goland*, 51 Cal.3d 202, 208 (1990) (emphasis added).

As usual, Judge Karlton's finding regarding the California Legislature's intent is clear and to the point:

> The legislative history of Section 51(f) reveals an intent to include **unintentional** disability discrimination within the scope of the Unruh Act. The Assembly Committee on Judiciary report on AB 1077 (as amended January 2, 1992, p.2) stated that the bill would: 'Make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 8

damages).'

*Wilson*, at 1137-38 (emphasis added).  Judge Karlton also noted that the California Senate Committee on Judiciary evinced the same intent:

> [T]his bill would make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for damages, including punitive damages).

*Id*., n.14.   In neither of these statements do either the Assembly or Senate Committee state – or even imply – that somehow the standards of ADA liability, where no showing of discriminatory intent is required, would somehow be changed so that the intent requirement of Cal. Civ. Code section 52 would be the new standard, or that, conversely, intent would still be required under the Unruh Act even though none is required under the ADA.

Logically, and legally, *Gunther* makes no sense.  It leaves the very real scenario of a disabled plaintiff proving an ADA violation, and therefore an Unruh violation, but yet not able to avail himself to the remedies of the Unruh Act unless intent is proven.  This completely undermines the purpose of the legislature's amending of the Act, which obviously was to **broaden the scope of the Unruh Act** to include violations of the ADA against disabled persons. (And it goes without saying that this also undermines the standards of ADA liability, where correcting *benevolent inaction* is just as important as correcting intentional discriminatory actions, and why, therefore, a showing of intent is not required.)  If no remedy under the Unruh Act is available unless intent is shown, then the legislature's action

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 9

would truly be "all bark and no bite."[1]

### i. Plain Language

Judge Karlton continued to eviscerate *Gunther* by applying the analyses of liberal construction and other canons of statutory construction (*see Wilson*, at 1138 – 1141), but, as usual, the simplest is almost always the most powerful.

Under any objective view, by applying the doctrine of "plain meaning," or assigning the "usual and ordinary meanings" of words to the statute at issue (*see Wells v. One2One Learning Found.*, 29 Cal. 4th 1164, 1170 (2006)), the amended language of the Unruh Act could not possibly be clearer: "A violation of any right of any individual under the [ADA] shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Full stop, end of story. If the ADA is violated, then the Unruh Act (which as discussed above, includes section 52) is violated as well, with no further inquiry into intent necessary or required.

Again, if this is not the case – that is, if the ADA can be violated but not the Unruh Act, as laid bare by the *Gunther* analysis – then the California legislature's 1992 amending of the Unruh Act is meaningless.

### 3. *Simply Put, the State Claims Do NOT Present Novel or Complex Issues of Law*

In short, McIver's state claims do not present novel or complex issues of law necessitating the rejection of supplemental jurisdiction

---

1   Also of importance to the legislative history is a letter to the author of the amendment bill that directly addressed the issue of intent, and which complained that the amendment provided disabled persons injured by the ADA with the remedies of the Unruh Act, with no intent required. *See Wilson*, at 1138. This letter clearly had no impact on the amendment. Thus, the author of the bill was in fact well aware that amending the Unruh Act as planned meant that a violation of the ADA was a violation of the Unruh Act with all remedies of said Act available, <u>regardless of intent</u>. Indeed, this is what the author of the bill –as well as the Senate and Assembly – <u>intended</u>.

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**

1  pursuant to 28 U.S.C. § 1367.  Recently, another Eastern District court also
2  analyzed this exact issue, and came to the same conclusion as the court in
3  *Wilson*.  In *Johnson v. Barlow,* 2007 WL 1723617 (E.D.Cal), Eastern
4  District Court Judge William Shubb stated:

> This conflict [as allegedly presented by *Gunther*] **does not represent the sort of "novel and complex issue of unresolved state law" contemplated by 28 U.S.C. § 1367(c) (1)**. Section 1367(c)(1) exists so that district courts need not "resolve difficult questions of [state] law." *Medrano v. City of Los Angeles,* 973 F.2d 1499, 1506 (9th Cir.1992) (citing *Moor v. Alameda County,* 411 U.S. 693, 715-16, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)). When state law is substantially unsettled, a district court may be left without sufficient guidance as to how to resolve a dispute, which weighs against exercising supplemental jurisdiction. *Moor,* 411 U.S. at 716. **In this case, however, the conflict internal to the Unruh Act is *not* novel-it has been litigated and decided by the Ninth Circuit in *Lentini,* and this court is legally bound to follow Ninth Circuit authority**. *Hart v. Massanari,* 266 F.3d 1155, 1175 (9th Cir.2001) ("A district court bound by circuit authority ... has no choice but to follow it, even if convinced that such authority was wrongly decided.").

*Johnson*, 2007 WL 1723617 at 2 (bold emphasis added, but not italics). *See also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, \*3) (S.D.Cal.) (Slip Copy).

In short, Frit Escondido's reliance on *Gunther* is misplaced.

**D.    Even Without a Statutory Analysis, Gunther is WRONG on the Law**

Finally, this Court need not even rely on the thorough analysis by Judge Karlton in *Wilson* in order to reject *Gunther's* holding.  Plainly stated, there is no requirement of intent to discriminate under either state or

*McIver v. Target Corporation, et al*, Case No. 08cv0132 IEG (WMc)
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 11

federal law, the *Gunther* case notwithstanding.  (Of course, this is even a truer statement when considered in light of the statutory analysis of the Unruh Act, as discussed *supra*.)

First, there is a distinction between (1) ***intentional conduct*** on the one hand and (2) ***discriminatory intent*** on the other hand.  They are not the same and should not be confused or conflated.  There are four published decisions that need to be harmonized to understand the state of the law with respect to the Unruh Civil Rights Act.  Those cases are: *Harris v. Capital Growth Investors XIV*, (1991) 52 Cal.3d 1142, 278 Cal.Rptr. 614, 805 P.2d 873; *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr. 133; *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist. 2003) 111 Cal.App.4th 932, 4 Cal.Rptr.3d 528; and *Gunther v. Lin*.

Again, when analyzed in light of a proper statutory analysis of the Unruh Act – one that takes into account the all-important intent of the California Legislature – these cases do not conflict with each other, and also do not conflict with *Lentini*.  The *Harris* case, in particular, is relevant because it is the case upon which *Gunther* relies, and it seemingly conflicts with an earlier California Supreme Court case, *Koire*.

First, let us begin with the highest authority on state law.  The California Supreme Court has ruled that there is **no need to establish discriminatory intent under the Unruh Civil Rights Act**.  *See Koire v. Metro Car Wash*  (1985) 40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr. 133.  In *Koire*, the plaintiff was challenging the practice of a car wash in providing for cheaper car washes for women on "ladies days" and, therefore, discriminating against men on those days.  The trial court found "no intent" to exclude or to make men "feel unwelcome, unaccepted or undesired." *Koire*, 40 Cal.3d at 33.  But the California Supreme Court, found a violation of the law and pointed out that: "**discriminatory *intent* is not**

*McIver v. Target Corporation, et al*, Case No. 08cv0132 IEG (WMc)
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 12

**required by the Unruh Act . . .** Plaintiff was entitled to equal treatment, no matter what his sex, and *regardless of defendants' intent in denying him equal treatment*." *Id.* (emphasis added, internal quotations removed). There could not be a more clear statement of the law: **There is no need to establish an intent to exclude**. *See also Lentini v. California Center for the Arts, Escondido,* 370 F.3d 837, 847 (9th Cir. 2004) ("We find that . . . no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation.")

Given this clear statement of the law by the California Supreme Court (and the Ninth Circuit in *Lentini*), one must then ask how we harmonize the subsequent California Supreme Court holding in *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142 (and upon which the *Gunther* court so heavily relied, and by extension Frit Escondido in the instant motion), that, "the language of the Act suggests that intentional acts of discrimination, not disparate impact, was the object of the legislation" or "the damages provision . . . reveals a desire to punish intentional and morally offensive conduct" or "we hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act. A disparate impact analysis or test does not apply to Unruh Act claims." *Id.* at 1172 and 1175.

A key to harmonizing the statement, "**discriminatory intent is not required**" (*Koire*) with "**a plaintiff must prove intentional discrimination**" (*Harris*) was revealed in a published decision that has had great practical impact in these ADA/Unruh cases: *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist. 2003) 111 Cal.App.4th 932, 4 Cal.Rptr.3d 528. In *Modern Development*, the court was faced with this very question: what is intentional conduct under the ADA and the Unruh Civil Rights Act?

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 13

(The court needed to resolve this question in order to decide whether the defendant insurance company had a duty to defend: If the conduct of plaintiff Modern Development was accidental, the company had a duty to defend; if intentional, then no duty to defend.)  The *Modern Development* court found that "as a matter of law" the inaccessible restrooms were "intentional conduct" and reasoned:

> The complaint alleged that the Swap Meet failed to comply with various antidiscrimination laws relating to the disabled and that because of the resulting lack of access he was injured. These events are not covered events under The Policy because they do not constitute "accidents" or "occurrences" as such terms are defined in the Policy. As argued by Navigators, Moreno's alleged injuries were caused by the architectural configuration of the Swap Meet and Modern Development's alleged failure to remove architectural barriers, not by an accident. **The Swap Meet intended for the bathrooms to be configured as they were**. The result is that the incident involving Mr. Moreno is not a covered event.

Id. at 941.  Thus, under *Modern Development*, a plaintiff does not need to prove that the defendant harbored some sort of *animus* towards the disabled.  Instead, the intentional discrimination required under the law (i.e. under *Harris*) is the intention to present the architectural layout as it exists (discriminatory or not).  In *Modern Development*, the court found that such intent was present based on the architectural configuration of the Swap Meet.  This finding jibes with both *Koire* ("discriminatory intent is not required") and *Harris* ("a plaintiff must prove intentional discrimination").

In fact, this fits the statutory scheme perfectly.  Under the Americans with Disabilities Act, it is an act of discrimination to "fail to remove" certain barriers.  *See* 42 U.S.C. § 12182(b)(2)(A)(iv).  The Unruh Civil

*McIver v. Target Corporation, et al*, Case No. 08cv0132 IEG (WMc)
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 14

Rights Act has incorporated that provision and, therefore, the failure to remove certain barriers is a violation of the Unruh Civil Rights Act. *See* Cal. Civ. § 51(f). In light of the *Koire/Harris/Modern* trifecta, we should say that it is a violation of the Unruh Civil Rights Act where there is an *intentional* decision to not remove barriers, or, similarly, an intention to present the architectural layout as it exists.

This harmonization does justice to each of the *Koire/Harris/Modern* decisions. Moreover, it helps make sense of a poorly worded *Gunther* decision. In *Gunther*, the plaintiff had complained about two violations: (1) lack of wrapped plumbing and (2) a non-compliant mirror. After considering the evidence, the *Gunther* court found that:

> There is also no question that defendant Lin never intended to violate the ADA. In his answer to Gunther's complaint Lin claimed that Gunther had entered the restroom "before our handyman had finished his work" of wrapping insulation around the pipe under the sink. Moreover, normally the restroom never has mirrors for anybody (because the mirror was subject to vandalism); an employee simply hung one by mistake.

Id. at *4.

Thus, because defendant Lin had *intended* that there be wrapped plumbing and had *intended* that there not be any mirror, the "violations" complained of by plaintiff Gunther were *un*intentional. In other words, the "intentionality" addressed by the *Gunther* court deals with whether the defendant intended its property to be the way that it was — not that defendant Lin had to desire to exclude persons with disabilities or treat them differently. In *Gunther*, the defendant did NOT intend that there be a mirror and did NOT intend that its plumbing be exposed and, therefore, the *Gunther* court found no violation.

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 15

In the present case, therefore, the parties must examine whether Frit Escondido intended to maintain the subject properties without, *e.g.*, accessible parking, accessible paths of travel, and accessible restrooms (among other violations) since effective business start-up dates, or since enactment of the ADA. The question is *not* whether Frit Escondido intended to specifically discriminate against disabled persons such as McIver; that is, the question is not whether Frit Escondido possessed discriminatory animus. Rather, the question is whether Frit Escondido <u>intended</u> to design the subject properties in their current state, which design happens to deny full and equal access to disabled persons such as McIver.

McIver urges this Court to reject the narrow and self-serving interpretation urged by Frit Escondido and interpret the law consistent with the published decisions, as well as based on sound canons of statute construction, as explicated by *Wilson*. Regarding the Unruh Civil Rights Act, the California "Legislature's desire to banish [discrimination] from California's community life has led [the California Supreme Court] to interpret the Act's coverage '**in the broadest sense reasonably possible**.'" *Isbister v. Boys' Club of Santa Cruz,* (1985) 40 Cal.3d 72, 75-76, 219 (emphasis added), *quoting Burks v. Poppy Construction Co.,* (1962) 57 Cal.2d 463, 468, 20.

After all, it is in the spirit of interpreting the Act's coverage "in the broadest sense reasonably possible," that the Honorable Judge Karlton stated: "Furthermore, the court finds that the issue of state law presented by the instant action is not particularly novel or complex in light of the overwhelming body of case law finding that proof of intent is not required [under the Unruh Act when an ADA violation is show]." *Wilson*, at 1138 n.15. *Gunther* is an aberration, not the law.

### III. CONCLUSION

*McIver v. Target Corporation, et al*, **Case No. 08cv0132 IEG (WMc)**
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 16

For the foregoing, McIver respectfully requests that this Court continue to exercise supplemental jurisdiction over his state claims.

First, if this Court is inclined to follow *Gunther* and require a proof of intent, McIver has pled the necessary intent, and has a right to prove up such intent through litigation.

Secondly, *Gunther* is not the law; it is rather an incorrect interpretation of both existing state and federal law, as well as a misinterpretation of both the Unruh Act and the Legislature's intent when that august body acted to amend the Unruh Act.

Finally, even if this Court rules to decline supplemental jurisdiction over the Unruh Act claim, it still must retain jurisdiction over the remaining state law claims, as defendant has presented no argument or evidence that these *other* state law claims present "exceptional circumstances" or "compelling reasons" to decline jurisdiction.

Dated: April 14, 2008            DISABLED ADVOCACY GROUP, APLC


                                  /s/ Lynn Hubbard, III, Esquire
                                 LYNN HUBBARD, III
                                 Attorney for Plaintiff Larry McIver

*McIver v. Target Corporation, et al*, Case No. 08cv0132 IEG (WMc)
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 17